IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2025 Session

## PATRICK KEVIN MORRIS AND GABRIELLE MORGERMAN, TRUSTEES OF THE MORRIS MORGERMAN TRUST UAD SEPTEMBER 28, 2000 v. JEFFREY M. FOSTER, ET AL

**Appeal from the Chancery Court for Williamson County**
**No. 23CV-52272     Deanna B. Johnson, Judge**

_____

**No. M2024-00711-COA-R3-CV**

_____

This appeal arises from a declaratory judgment action regarding whether one homeowner in a subdivision has the exclusive right to access a private road within the subdivision. The homeowner asserted that it had exclusive access to the road pursuant to a contractual agreement between the homeowner's association and a previous owner of the property, so it maintained a gate across the road, preventing other homeowners from accessing it. The trial court ruled, in the context of various summary judgment motions, that the contractual agreement did not give the homeowner exclusive access to the road, and it ordered the homeowner to provide access to all HOA members. The trial court also awarded attorney fees to the respondents, which included the homeowner's association and the owners of a neighboring property. The petitioning homeowner appeals. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Patricia R. Young, Franklin, Tennessee, for the appellants, Patrick Kevin Morris and Gabrielle Morgerman, Trustees of the Morris Morgerman Trust UAD September 28, 2000.

Ryan W. Pratt and Gavin Dwyer, Nashville, Tennessee, for the appellee, Beechwood Plantation Homeowners' Association, Inc.

Kathleen Robson Gordon and Huntly Gordon, Chicago, Illinois, for the appellees, Amanda K. Foster and Jeffrey M. Foster.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

This appeal involves a dispute over access to a private road within the Beechwood Plantation subdivision in the Leipers Fork area of Williamson County, Tennessee. The subdivision consists of 21 large acreage lots. This dispute primarily involves two owners of neighboring lots and the Beechwood Plantation Homeowners' Association, Inc. ("the HOA"). The following image depicts the general layout of the relevant area of the subdivision, as recorded in the plat book of the Register's office for Williamson County:



As this image illustrates, some of the subdivision lots had road frontage along Bailey Road, which is a public road. Other lots were to be accessed by three private roads within the subdivision, designated Parshot Lane, Rockmayne Lane, and Mistico Lane. This appeal involves a dispute over the use of Parshot Lane.

The plat contained a "Special Note" regarding the lots' access to the roads, which

stated:

> LOTS 13, 14, 15, 16 AND 17 MAY TAKE EXCLUSIVE ACCESS FROM ROCKMAYNE LANE.
>
> LOTS 18 AND 19 MAY TAKE EXCLUSIVE ACCESS FROM PARSHOT LANE.

The subdivision's "Declaration of Protective Covenants, Conditions and Restrictions" ("Covenants") also addressed road access. The Covenants contained an Article entitled, "Easements," which provided, in pertinent part:

> 8.03 <u>Ingress/Egress and Utility Easements</u>. As shown in the Plat, there is hereby created a number of fifty foot (50') wide ingress/egress and utility easements across certain Lots which will allow ingress and egress to and from, and utility access to, one or more additional Lots that do not otherwise have road frontage. The Ingress/Egress and Utility Easements are hereby established as perpetual and irrevocable easements across the Lots that they encumber. Said easements are granted and reserved for their prescribed uses only. No Owner shall have the right to restrict, impede or take any action in any way to prohibit or limit the prescribed uses of said easements by the persons intended to be benefited thereby. Each Owner shall abide by the following terms, conditions and covenants:
>
> (a) *Access Roads*. Developer initially shall construct and provide asphalt-paved access roads of at least twelve (12) feet in width **to be located on each of the Ingress/Egress and Utility Easements** which will provide access to those Lots that do not have road frontage (the "Access Roads"). Developer makes no representations or warranties regarding the extent or quality of such Access Roads and shall have no obligation to maintain or repair any such Access Roads. The Association shall be responsible for paying all costs associated with maintaining, repairing, improving or upgrading the Access Roads, which costs shall be recovered through the levy of annual or special assessments as appropriate. While the Access Roads are private to Owners of the Development and their invitees, **every Owner shall have the right to access and use all of the Access Roads regardless of whether or not a particular Access Road actually affords access to the applicable Owner's Lot.**
>
> (b) *Common Gates*. Upon the unanimous agreement of all of the Owners who own Lots which are serviced by a particular private access road, there may be erected upon the applicable private access road common gates for purposes of security and restricting public access. Any such common gates shall be erected and maintained at the sole cost of those Owners whose

Lots are serviced by the applicable private access road and shall be constructed in accordance with guidelines promulgated by the Committee from time to time, which may include a requirement that Plans for the construction of said common gates by [sic] submitted to the Committee for approval. . . . **All Owners (not just those owning Lots serviced by the applicable gated private access road) shall have free and unlimited access through any common gates erected pursuant to this Section.**

(bold emphasis added).

The particular dispute at issue on appeal involves the lots surrounding Parshot Lane, which are depicted on the following survey:



In 2014, Jeffrey and Amanda Foster purchased Lot 18. When constructing their home, the Fosters obtained approval from the HOA to connect their driveway to Rockmayne Lane rather than Parshot Lane, even though the plat provided that Lots 18 and 19 "may take exclusive access from Parshot Lane." Lots 19, 21, and 22 were owned by Jan and Brian Babiak.

In 2015, a "Letter of Intent" was prepared and presented to the HOA to gauge the interest of the HOA owners regarding the idea of removing Lots 19, 21, and 22 from the

HOA, with the agreement that all maintenance of Parshot Lane would become the responsibility of the Babiaks. The Letter of Intent was apparently "approved" but never signed because the parties subsequently learned that this proposal would require changes to the Covenants that they did not want to pursue. Instead, the parties decided that Lots 19, 21, and 22 would remain in the HOA, subject to a mutually beneficial agreement. Two members of the HOA Board of Directors executed a "Letter Agreement" defining their roles and responsibilities. Because the Letter Agreement gives rise to the current dispute on appeal, we will reproduce it nearly in its entirety:

**Letter Agreement: Brian & Jan Babiak; Lots 19, 21, 22 March 12, 2017**

This agreement will go into the records of the Beechwood Plantation Board.

As a formalization of the homeowner-endorsed Letter of Intent (LOI), attached, from October 2015, the following is agreed to by the undersigned, modifying the LOI. The basic terms have been in practice throughout 2016, and now will be officially effective for 2017 and beyond.

The LOI provision stating the above three lots are to be removed from the HOA is reversed, and will now remain in the HOA under the following terms:
- The Babiaks are exempt from paying Annual Assessments (Article IV Sec. 4.1). Special Assessments (Article IV Sec. 4.2) for capital improvements for common use items would be levied as one (1) assessment for the combined three (3) lots. Specifically, the Babiaks would participate in common use items affecting all members (such as trail improvements), but are exempt from any road work on Rockmayne or Mistico, and other Special Assessments that don't benefit all members. The Babiaks will be responsible for all maintenance along Parshot Lane to a standard no greater and no less than that maintained over time by other HOA managed roads, specifically:
  - Road maintenance
  - Mowing and landscaping maintenance along Lots 19, 21, and 22 (with Lot 20 mowing and landscaping maintained and funded by Lot 20 owners), except for the area between the fence and Bailey on Lot 21 which will be maintained by the HOA.
  - Parshot Lane water system maintenance,[1] billing and payments

---

[1] According to the current owner of Lots 19, 21, and 22, a water pumping system was required to get water to these lots due to the elevation. The Covenants provided that owners of certain lots located above a certain elevation would be required to participate in the costs associated with pumping water to those lots and would be subject to an additional assessment periodically to cover the costs associated with

(thus fully satisfying all of their responsibilities under Article IV, Section 4.8)
- Fencing[2]
  - Recent required fence repairs/replacement were covered by the HOA, from this point forward >
    - Bailey Rd & Lot 20 Parshot Lane maintenance will be managed and funded by the HOA.
    - Remaining Parshot Lane maintenance will be managed and funded by the Babiaks.
    - Allocation of fencing related costs along property lines shared with others will be agreed between relevant property owners as required (e.g. Lot 18 and 19, Lot 19 and 20).
    - There will be no requirement to provide fencing along Parshot Lane on Lots 21 and Lot 22.
- Trail maintenance across Lot 19 will be managed and funded by the HOA.
- Lot 19 related Rockmayne frontage landscaping (mowing) will be managed and funded by the Babiaks.
- The HOA will account for and reinforce the initial damage in the final topping of Parshot from 2015 will be included in the final topping & repairs on Rockmayne & Mistico in 2016 (to be funded by Tower Investments).
- Maintenance access to Lots 18 & 20, from Parshot, will be granted as needed.
- All other HOA covenants, decisions, etc. will apply accordingly.
- The Babiaks retain their vote as members of the HOA.

The Letter Agreement closed by stating that in the event of a future sale of Lots 19, 21, and 22 "as a package," these same terms would be transferable to the new owner. In 2018, the

_____

operating the pumps, in addition to a monthly bill for water usage.

[2] Regarding fencing, the Covenants had originally provided:

8.05  Fencing Easement.    As shown on the Plat, there is hereby created a number of five foot (5') wide Fencing Easements located on those Lots with frontage on an Access Road and/or Bailey Road (each, a "Frontage Lot"). There shall be erected on each such Fencing Easement a black, four-rail fence which shall be located along the portion of any Frontage Lot that fronts upon a Private Access Road or Bailey Road. . . . Once built, the Association shall assume responsibility for maintenance, repair and upkeep of the fences located on the Fencing Easements and providing any special landscaping approved by the Board, which shall be funded through annual and special assessments, as appropriate, levied by the board for that purpose. All other upkeep of the portion of any Lot encumbered by a Fencing Easement shall be the responsibility of the Owner of that Lot.

Covenants were amended, but the provisions regarding ingress and egress easements remained substantially the same as those recited above.

In 2021, Lots 19, 21, and 22 were acquired by Patrick Kevin Morris and Gabrielle Morgerman, as Trustees of the Morris Morgerman Trust UAD September 28, 2000 ("the Trust"). The Trust maintained a gate blocking access to Parshot Lane. Around this time, the Fosters, who already owned Lot 18, purchased a 23-acre unimproved property on Bailey Road that is outside the boundary of the subdivision but adjacent to the Fosters' Lot 18. The unimproved lot shares a common boundary with Lot 18 near the end of Parshot Lane, as shown on the following tax map:



The easement on Parshot Lane runs over 110 feet past the driveway for Lot 19 and is adjacent to the Fosters' property. The image below depicts Parshot Lane as constructed, with the Fosters' Lot 18 on the lower left and the Trust's driveway on the right:



The Fosters sought access to Parshot Lane, but the Trust insisted that Parshot Lane effectively became its own private drive pursuant to the Letter Agreement.

In March 2023, the Trust filed this declaratory judgment action to establish the rights and obligations of the parties regarding the use of Parshot Lane. The Trust named

as respondents the Fosters and the HOA. Because the Letter Agreement provided that "[m]aintenance access to Lots 18 & 20, from Parshot, will be granted as needed," the Trust insisted that this was the *only* access to Parshot Lane that was permissible. Thus, according to the Trust, HOA members no longer had *any* right to access Parshot Lane *except* for Lots 18 and 20, and only then when periodic maintenance access was needed to comply with fence maintenance requirements. The Trust sought a declaratory judgment to that effect.

The Fosters filed an answer, stating that they, too, would like the court to resolve the dispute. However, the Fosters asserted that the Trust had failed to name necessary parties, including the Lot 20 owners and "likely" all HOA members. The Fosters asserted a counterclaim for breach of contract against Patrick Morris and Gabrielle Morgerman, individually and as trustees of the Trust. The counterclaim asserted that the counter-defendants violated the Covenants by erecting a gate without unanimous consent of all affected lot owners and barring access to Parshot Lane. They asked the court to find that a breach of contract had occurred, order removal of the gate, and award them attorney fees.

The HOA also filed a counterclaim for declaratory and injunctive relief against the Trust. It asserted that the Covenants were controlling and that the Letter Agreement simply did not permit the Trust to erect a gate blocking access to Parshot Lane. The HOA also sought an award of its attorney fees.

In August 2023, the Fosters filed a motion for summary judgment as to the Trust's petition for a declaratory judgment. (Notably, however, the motion did not address the Fosters' own counterclaim for breach of contract.) The Fosters asserted that they were entitled to summary judgment on the declaratory judgment issue because the subdivision plat and the Covenants gave them an easement allowing Lot 18 to access Parshot Lane. The Fosters argued that the HOA did not have the authority to divest them of their access to Parshot Lane through any contractual agreement, as their deed was subject to the subdivision plat expressly giving Lot 18 access to Parshot Lane via the Special Note. They also noted that the Covenants provided that the ingress and egress easements were perpetual and irrevocable. To the extent that the Trust argued that the Letter Agreement superseded the Covenants, the Fosters pointed out that the Covenants were subsequently amended in 2018 and contained substantially the same provisions regarding the ingress and egress easements. The Fosters additionally noted that they had raised the affirmative defense of failure to name a necessary party. They argued that the Trust was attempting to extinguish access rights of Lot 20 and all other HOA members without notice to them. Thus, the Fosters argued that they were entitled to summary judgment on the declaratory judgment petition because of their easement and their establishment of a valid affirmative defense.

In September 2023, the Trust filed a response to the Fosters' motion for summary judgment, asserting that summary judgment was premature because no discovery had commenced. The Trust filed an affidavit from its counsel, detailing efforts she had made

to obtain records from the HOA *before* the lawsuit was filed in March. She acknowledged that some documents were provided at that time but characterized them as "scant" and "not responsive" to her request. According to the Trust, however, "[n]o discovery ha[d] commenced" since the lawsuit was filed six months earlier. In any event, based on the records in its possession, the Trust argued that there were genuine issues of material fact regarding whether the Trust had the right to exclusive use of Parshot Lane. In fact, the Trust argued that "[t]he deeds and the Plat are irrelevant to the issues in the Petition as the [Letter] Agreement was executed long after the Fosters' deed, and it is that contract that is the basis for the Petition." The Trust insisted that the Letter Agreement was the controlling document, as it modified any contrary terms in the Covenants and simply needed to be enforced. The Trust characterized the dispute as one of contract interpretation, but at the same time, it asserted that "business records of the HOA will shed light on the actions and performance of (1) the HOA, and (2) the Babiaks, as well as the subsequent owners of the Trust Lots rights and obligations under the [Letter] Agreement." Regarding the issue of joinder, the Trust argued that there was no need to join any additional members of the HOA in this lawsuit because the HOA had standing to act on behalf of all members. The Trust also filed a separate motion for partial summary judgment only as to the issue of joinder, insisting that the HOA was the proper party and had standing to represent its members, so no additional parties were necessary. The Fosters filed a response, maintaining that the Trust had failed to name necessary parties. The Fosters also filed a reply in support of their motion for summary judgment, arguing that the Trust was "on a fishing expedition to attempt to find HOA documents" that were irrelevant.

In October 2023, the Trust sent the HOA a request for physical inspection of documents pursuant to Tennessee Rule of Civil Procedure 34.02. According to the Trust, counsel for the HOA initially stated that there were no additional documents to be produced. After further discussion, counsel for the HOA reportedly stated that "he was working on the records request" but refused the request to inspect personally, citing the fact that the parties were in the midst of litigation and everything was stored electronically.

Around this time, the HOA filed its own motion for summary judgment. It maintained that the Covenants were controlling and that they prohibited the Trust from erecting a gate that blocked access to Parshot Lane. The HOA submitted an affidavit from the HOA President, who stated that a prior owner of Lot 19 had previously received permission from the HOA Board to install a temporary construction gate after experiencing issues with trespassers, but even then, the Board authorized the temporary gate on the condition that all members of the HOA were given the gate code and allowed access. The Trust filed a response. The Trust insisted that when it purchased the property, there was already a permanent gate there, although it admitted that it "replaced" the existing gate. As for the documents, the Trust suggested that the trial court should not consider the HOA's summary judgment motion until the HOA produced the requested records. The Trust submitted a second affidavit from its counsel regarding her recent request for inspection of documents. The Trust asserted, "Upon a review of the records, it is anticipated

interrogatories or depositions of the HOA Board will be scheduled."

One week before the hearing on the summary judgment motions, the Trust filed a motion to compel production of documents. The motion detailed the Trust's attempts to obtain documents before suit was filed, in January and February 2023, at which time "HOA's counsel forwarded a Dropbox of documents." The motion also described the Trust's recent request for physical inspection of documents in October 2023. The Trust sought an order requiring the HOA to permit counsel "to personally inspect all HOA documents and records."

A hearing was held on the various motions for summary judgment on November 28, 2023. The motion to compel, filed just one week earlier, was not set for hearing that day. Still, counsel for the Trust argued, "I have no discovery. I've been asking for a year." She acknowledged that she "got 51 documents" but claimed they were mostly irrelevant. Counsel suggested that she needed financial records, billing records, payment records, budgets, etc., in order to confirm whether the parties had been "abiding by" the Letter Agreement and whether it was effective. She noted that the Fosters had raised an issue regarding whether the Board had the authority to enter into the Letter Agreement. She also claimed that the Covenants gave HOA members the right to inspect records. Counsel suggested that there was no reason for her to take any depositions until she could review the records. Thus, she asked the court to reschedule the hearing of the summary judgment motions filed by the HOA and the Fosters "for a day after discovery." She did ask the court to go ahead and decide the Trust's motion for partial summary judgment regarding the need for any additional parties.

As counsel for the HOA began to argue, the trial judge admitted that she was concerned about the Trust's contention that it had been requesting documents to no avail, and therefore, it could not adequately respond to the summary judgment motion. Counsel for the HOA noted that the motion to compel was not before the court, and the HOA had not yet filed its response to it, but he submitted that the HOA had already turned over "all the relevant documents." He noted that before turning over financial documents, the HOA had to ensure that it was not disclosing private information. The trial judge then asked counsel for the Trust to specify which documents she needed in order to properly respond to the summary judgment motions. She responded, "Financial records, and I'll tell you why." She explained that she needed to be able to show who paid for maintenance obligations for Parshot Lane after execution of the Letter Agreement. Counsel for the HOA characterized the dispute as "all about a gate" and whether the Trust could prohibit access to Parshot Lane, which was an issue "very clearly stated in the governing documents." Counsel for the Trust again responded that she "would rather have a hearing after discovery where I can understand that these terms and conditions have been complied with," and she noted that she had also asked for any correspondence from the HOA to prior owners about road maintenance. She insisted that the case was "not ready for Summary Judgment because I don't have basic documents." However, counsel for the HOA insisted that all of

that was "completely irrelevant," considering the Covenants. The trial judge questioned counsel for the Trust about the fact that she had only filed a motion to compel one week earlier, adding, "But you said you were trying to get it since last year, right?" The judge also asked counsel to specifically list what types of financial records she needed. Counsel said that she needed billing records to members for dues and assessments, which would reflect that the Letter Agreement "ha[d] been made." Essentially, she wanted to see who was billed for what after execution of the Letter Agreement.

The trial judge then gave the Fosters the opportunity to be heard. They insisted that it was proper to proceed with hearing the summary judgment motions because "there's no reason why any financial record of the HOA is relevant as to their position here today." The Fosters argued that the issue before the court was "straightforward," and the relevant documents had been filed with the court, including the subdivision plat, survey, and the Covenants. As counsel for the Fosters simply put it, "The Trust claims a 2017 agreement, referred to as the [Letter] Agreement, . . . gives the Trust exclusive access to Parshot Lane. It does not." He further argued that "if the Board, according to the Trust, entered into an agreement to limit access to Parshot Lane," the Board did not have the ability to do so under the governing documents. Thus, the Fosters argued that the interpretation of a contract was a matter of law, and the undisputed facts led to a single conclusion -- they maintained a perpetual and irrevocable easement under the Covenants and plat, and the Trust was prohibited from erecting a gate and blocking access to Parshot Lane.

Counsel for the Trust suggested that the court postpone the remainder of the hearing until December, when the motion to compel was set to be heard, which would allow the parties an opportunity to try to settle the matter. Counsel for the HOA requested more time to work on producing documents, but he asked for clarification from the court regarding what was actually necessary to produce. However, looking again at the Letter Agreement, the trial judge proceeded to ask the attorneys some questions. The following exchange occurred:

> THE COURT: Yeah. Let me ask a few questions, not to try to blow up your deal, or potential for agreement, I should say.
> On the [Letter] Agreement, Page 2, the bullet points, the second bullet point at the top, the middle one, all other HOA covenants, decisions, et cetera, will apply accordingly. We've got that issue. Where in the [Letter] Agreement does it say that any homeowners, or even the Babiak, or whatever their name is, could just put up a gate to block -- or that they have sole use of –
>
> [Trust Attorney]: . . . What it says in the [Covenants] is that if four homes are served by a road they can have an unanimous agreement, technically, about the gate.

- 11 -

[HOA attorney]: But they still have to –

[Trust Attorney]: It doesn't say they can block anybody out, just they could put up a gate.

THE COURT: But where in this [Letter] Agreement does it say that your clients, the new people who live there, or anybody, even the Babiak, could put up a gate and block the road?

[Trust Attorney]: A gate has been up long before we got it. The date of when and how is debatable. But it became, in essence, a private road under that agreement, and we were the only member there. To my knowledge -- and I can't go back before the prior owners -- no one has ever requested access until the Fosters did in '21.

THE COURT: But where does it say it becomes a private road?

[HOA attorney]: It doesn't.

[Trust Attorney]: We're the only house on it. If we pay for everything to do with it, in essence it makes it a private road. There's no other member that shares the daily use of that road, and never has.

[Fosters' attorney]: It borders two other properties.

. . .

[Trust Attorney]: What the agreement does say is Lot 18 and 20 may have access to Parshot when they need to do maintenance at the back of their properties, which are at the top of the hill where Parshot is. It does imply they don't have any access to it otherwise.

. . .

[HOA Attorney]: Your Honor, even if taken as true, let's just say hypothetically that we agreed that the [Letter] Agreement was in place and that they didn't pay the assessments, what authority do they have to build a gate and prevent all the members from accessing what goes beyond that gate?

THE COURT: It's not in this [Letter] --

[Trust Attorney]: If it becomes a one-man driveway for Lot 19, I understand the [Covenants] say any members will have access to any of the

prior private roads, except now that private road, Parshot, has become, essentially, a big long driveway for one owner that has to take care of all of it.

. . .

THE COURT:		Well, I don't want to order him to provide these financial records --

[Trust Attorney]:	That's what I was going to say. Let's see if we get it settled. . . .

THE COURT:		Y'all can try to settle it, but I'm not going to order them to turn over those records. Now, if he thinks he wants to -- but, I mean, I'm inclined to -- I mean, I'm looking at this [Letter] Agreement. I don't see anywhere where it says they can block the road, the road is theirs, the road is private. I do see where it says all other HOA covenants, decisions, et cetera will apply accordingly, which would be the 2018 [Covenants] that would come in and apply.

[Trust Attorney]:	Well, the Fosters take the position -- and I'm not sure what the HOA -- they don't talk about the Babiak Agreement in this agreement. They say the Board didn't have the authority to do it.

THE COURT:		But there's nothing in this agreement that says this is a private road or that anybody can put up a gate, or that the Babiak, or now your clients, the Trust, has sole access and no one else can have it; that they can put up a gate. None of that is in the [Letter] Agreement.

[Trust Attorney]:	I believe part of it is the natural logic of if you have to maintain it and take care of it, they can't come in and bring construction traffic over it.

. . .

THE COURT:		It's not in the [Letter] Agreement, so I'm not going to order them to provide these documents, because I don't even see how they could put up the gate, whoever put it up, and block all the other folks from accessing that road. It's just not in this agreement. You were saying all along that it's in the [Letter] Agreement, but it's not. It's nowhere in here. And, indeed, the [Letter] Agreement does specifically say that all other HOA covenants, decisions, et cetera, will apply accordingly. The attorney for the Fosters pointed out different sections of the [Covenants] that say you would

- 13 -

have had to have gotten permission from the ARC to put up the gate in the first place.

So if y'all want to try to work it out -- I think you can work something out -- fine. But I'm not going to require the Beechwood Plantation HOA to turn over these documents. I just don't see how they're relevant.

On December 6, 2023, the trial court entered a written order stating that all summary judgment motions were continued for possible settlement until January. The order stated that the HOA was not required to tender additional discovery at that time. The order stated, "The Court finds that assuming *arguendo* the '[Letter] Agreement' is enforceable, nothing in said agreement gives the Petitioners the right to erect a locked gate blocking Parshot Lane[.]" As such, the court ordered the Trust to immediately provide the gate access code to the attorneys for the HOA and the Fosters for dissemination to all HOA members, with a request that they would only share it with guests and invitees as necessary.[3]

Before the next hearing, the HOA filed a reply in further support of its motion for summary judgment. The HOA submitted that, even assuming arguendo that the Letter Agreement is valid, for purposes of summary judgment, "it still does not grant the Trust the ability to convert Parshot Lane into a private driveway." Thus, the HOA argued that, even viewing the facts in the light most favorable to the Trust, the Letter Agreement did not grant it the unilateral authority to erect a private gate and prevent HOA members from accessing the road.

The trial court held an additional hearing on the summary judgment motions on January 9, 2024. The HOA reiterated its concession, for purposes of summary judgment, that the Letter Agreement was valid; however, it maintained that nothing in the Agreement gave the Trust exclusive use of Parshot Lane. In response, the Trust repeated its position that the provision of the Letter Agreement stating, "[m]aintenance access to Lots 18 & 20, from Parshot, will be granted as needed," would *imply* that Lots 18 and 20 were limited to maintenance access only, and no further right to access existed. The Trust also noted that the Fosters had disputed whether the HOA had the authority to enter into the Letter Agreement. As such, the Trust again suggested that it should be able to obtain proof to "develop how that agreement came about, what the intent of it was, . . . the terms and intents of the [Letter] Agreement, and the rights and obligations particularly of the Fosters and the Trust under that agreement." The Fosters again argued that the Trust's "entire argument is irrelevant" because the Covenants granted them an irrevocable ingress and egress easement. The Trust asked the trial court to reconsider its previous ruling that it would not compel the HOA to produce any additional documents. However, the HOA

---

[3] Days later, the HOA filed an emergency motion for a temporary injunction and a motion for a temporary restraining order, stating that the Trust was in the process of constructing improvements, including a fence and driveway, in violation of the Covenants and without necessary approval. The trial court entered the restraining order, restraining the Trust from further construction. The Trust later admitted it needed to obtain the necessary approvals, an agreed order of temporary injunction was entered.

argued that it had already produced the relevant documents and that the additional records sought by the Trust were irrelevant to the issues before the court. It also noted its concession that the Letter Agreement was valid. The trial judge again ruled that the documents did not need to be disclosed because the Trust had not demonstrated a good reason to the court for disclosure. The trial court also heard argument on the Trust's motion for partial summary judgment regarding the joinder of parties. The Trust claimed that it had served all necessary parties; the Fosters argued it did not.

On January 25, 2024, the trial court entered a 44-page written order resolving the pending summary judgment motions. The trial court found that the motions for summary judgment filed by the HOA and the Fosters were well taken and must be granted, and this effectively rendered the motion for partial summary judgment filed by the Trust moot. The trial court first addressed the HOA's motion for summary judgment. The court found it undisputed that the Trust purchased its lots subject to the Covenants, and those Covenants prohibited HOA members from erecting gates without approval or blocking HOA members from accessing Parshot Lane. The court found that a temporary construction gate was erected by a prior owner with HOA approval upon the stipulation that access must be allowed to HOA members, but the Trust erected a permanent gate and blocked member access. The trial court noted the HOA's concession that the Letter Agreement was a valid agreement for purposes of summary judgment, although the HOA maintained that the Letter Agreement did not give the Trust authority to exclude HOA members from Parshot Lane. On the other hand, the trial court noted that "the Trust argues the entirety of Parshot Lane became a private driveway for the owners of Lots 19, 21, and 22, subject only to maintenance access by [the HOA] to Lots 18 and 20 as necessary." The trial court also noted the Trust's position that the Letter Agreement remained in full force and effect, and the HOA had acted in a manner consistent with the Letter Agreement since its execution, as the HOA had not maintained Parshot Lane, nor had the Trust been asked to resume payment of fees and assessments from which it was exempt under the Letter Agreement.

The trial court's order stated that, when the terms of a contract are not ambiguous, issues of contract interpretation are well suited for summary judgment. The court found that the parties had conceded that the terms of the Letter Agreement "speak for themselves," and the only issue before the court was the application of those terms to the case at hand. Ultimately, the trial court found that the Trust's arguments "fail for multiple reasons." "[F]irst and foremost," the trial court found that the Letter Agreement "does not give the Trust any form of exclusive access to or use of Parshot Lane." It found that the Letter Agreement incorporated by reference the Covenants, "including the general right of access to Parshot Lane for all members of the Subdivision." "Having reached these conclusions," the trial court found it clear that the Trust had violated the Covenants and that the HOA was entitled to judgment as a matter of law. The trial court went on to elaborate as to how it reached these conclusions.

Examining the Letter Agreement, the trial court found that it only exempted the

Babiaks from paying certain assessments on the condition that they assume responsibility for the maintenance of Parshot Lane, but nothing in the agreement gave them exclusive access to Parshot Lane. To the contrary, the trial court found that the Letter Agreement expressly provided that the HOA *would* have access to Parshot Lane, as it stated, "Bailey Rd & Lot 20 Parshot Lane maintenance will be managed and funded by the HOA," and "[m]aintenance access to Lots 18 & 20, from Parshot, will be granted as needed." Thus, the trial court found that the Agreement expressly contemplated other parties accessing Parshot Lane for one purpose or another, and it never used any words such as "sole," "exclusive," or "only." The court found the Trust's argument that Parshot Lane became a private driveway "defies a plain reading of the clear and unambiguous text of the agreement." Moreover, the court noted that the Letter Agreement incorporated the Covenants by reference. The trial court quoted the Covenant provisions regarding the ingress/egress easements, access roads, and gates. It explained that the Covenants essentially provide all members of the subdivision with a general right of access to all service roads. The court concluded that the Letter Agreement, "the document the Trust contends controls this entire case," simply did not modify the Covenants such that Parshot Lane became a private driveway. Pursuant to the Covenants, the court found, the Trust would need consent from the Fosters and the Lot 20 owners prior to erecting a security gate across Parshot Lane, in addition to permission from the architectural review committee and the HOA Board. Because the Trust erected a gate without such permission or consent, the trial court found that the Trust had violated the Covenants. Furthermore, the court found that the Trust's refusal to allow HOA members to access Parshot Lane after erecting the gate was a further violation of the Covenants. For all these reasons, the court found that the HOA's motion for summary judgment on the declaratory judgment issue was well taken and must be granted. It also found that the HOA was entitled to its attorney fees pursuant to the Covenants, which provided for an award of such fees to the prevailing party in any action to enforce the Covenants.

Next, the trial court addressed the Fosters' motion for summary judgment. The court acknowledged that its analysis in the preceding section was controlling, as the court had already concluded that the Trust did not have an exclusive interest in Parshot Lane, all members of the HOA had an unfettered right to access Parshot Lane, and the Trust violated the Covenants by erecting the gate and blocking member access. Out of an abundance of caution, the court went on to separately analyze the Fosters' motion as well. The court found that the Fosters had an easement granting them uninhibited access to Parshot Lane pursuant to the subdivision plat and the Covenants. After setting forth the parties' various arguments, the court again explained that the Letter Agreement only exempted the Babiaks from paying certain assessments on the condition that they took responsibility for the maintenance of Parshot Lane. However, nothing in the Letter Agreement gave them exclusive rights to access Parshot Lane. The Covenants, which were incorporated by reference, unequivocally stated that "every Owner shall have the right to access and use all of the Access Roads regardless of whether or not a particular Access Road actually affords access to the applicable Owner's Lot." Therefore, the trial court found that the Fosters'

motion must also be granted, and they were entitled to an award of their attorney fees as well.

The trial court noted that the Trust had also filed a motion for partial summary judgment regarding the issue of whether the HOA members needed to be named as parties to this action. The court found that its analysis of the summary judgment motions effectively rendered that issue moot. The court reasoned that the issue of joinder did not impact the court's finding that the Trust violated the Covenants and wrongfully impeded the Fosters' right to access Parshot Lane. The court explained that it had already declared the rights and obligations of the parties regarding Parshot Lane, such that the Trust's petition for declaratory judgment had been defeated. As such, the Fosters' affirmative defense regarding joinder was "no longer relevant," and the court found no need to address the merits of the Trust's motion.

Finally, the trial court noted that the Fosters had asserted a counterclaim for breach of contract, which was not presently before the court for adjudication within the various motions for summary judgment. As such, the court explained that the counterclaim for breach of contract would survive the instant motions and remain as the only cause of action before the court.

After the entry of this order, the attorneys for the HOA and the Fosters filed attorney fee affidavits as directed by the trial court. The Trust filed a motion for permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. The Fosters filed a response, arguing that an interlocutory appeal was unnecessary and that they were filing a motion for summary judgment on their last remaining counterclaim that same day, asking the court to rule in their favor for the same reasons the court had already discussed in its previous summary judgment order. That same day, the Fosters filed a motion for summary judgment on their counterclaim against Patrick Kevin Morris and Gabrielle Morgerman, individually and as trustees of the Trust. They noted that the court had already found in their favor on the original petition for declaratory judgment and asserted that they were seeking the same remedies for their breach of contract claim. The HOA also filed a response to the motion for interlocutory appeal, noting that the motion would be moot if the court granted the Fosters' motion for summary judgment on the outstanding counterclaim.

At a hearing on the motion for interlocutory appeal in April 2024, counsel for the Trust began by noting that "[t]he only matter left before the court is the countercomplaint of the Fosters," which sought removal of the gate, and she stated that the gate had already been taken down in February. She added, "so essentially the Court's already ruled not for the countercomplaint, per se, but it's already ruled on all of this." She explained, "the Fosters have a pending motion for summary judgment on their countercomplaint, which I believe is – it's already been ruled on and is in effect now. The only thing would be whether there's an additional affidavit for fees, and that's all that's left." Still, the Trust sought

"permission to go ahead and appeal." The HOA's attorney argued that the trial court had already interpreted the governing documents and that an interlocutory appeal would be a waste of resources. Counsel for the Fosters likewise argued that only outstanding issue before the court had "already been ruled on." He suggested that the court's ruling on the remaining issue would be forthcoming and almost certainly be the same, which would negate the need for an interlocutory appeal and conserve resources. Counsel explained that he had attempted to have the summary judgment motion hearing scheduled for that day, but it was moved to June. The trial judge then asked the attorneys the following question about how to proceed:

| | |
|---|---|
| THE COURT: | So would your-all's preference be for the Court to just go ahead and deny the motion or grant the motion for summary judgment as pending? |
| [Fosters' attorney]: | Yep. That would be great. |
| THE COURT: | And then that way we have a final order and it can go on up? |
| [HOA attorney]: | Yes, Your Honor. |
| [Trust attorney]: | I think that's exactly what's going to happen. |
| THE COURT: | Okay. I'll do that. So I'll draft the order. |
| [HOA attorney]: | Thank you, Your Honor. |
| THE COURT: | Obviously the interlocutory appeal request is denied. All right. Thank you. |
| [HOA attorney]: | Thank you. |
| [Trust attorney]: | Thank you. |

The trial court then entered a written order resolving the motion for interlocutory appeal and the pending motion for summary judgment. The order stated that during the April hearing, "the parties opined the Fosters were likely to succeed on their pending motion for summary judgment based on the Court's previous holdings," so "the parties stipulated to the Court granting the Fosters' pending motion for summary judgment on their counterclaim for breach of contract" and stipulated to the court denying the motion for interlocutory appeal. The court noted that the parties opined that a Rule 3 appeal would be more effective than pursuing an interlocutory appeal. The trial court also concluded that judicial economy would best be served by addressing the outstanding summary judgment motion at that time, as it was "the only issue remaining before the Court" and would obviate the need for an interlocutory appeal. The court noted that the Fosters' second motion relied in part on the court's previous holdings in their favor on the same issues relevant to the counterclaim, and it was based on the "exact same facts." Therefore, the trial court denied the motion for interlocutory appeal and granted the Fosters' second motion for summary judgment.

The Trust filed a notice of appeal. At that point, however, the trial court had not yet entered orders awarding a specific amount of attorney fees to the HOA or the Fosters. On

- 18 -

May 29, 2024, the trial court entered an order awarding the Fosters $42,131.60 in attorney fees to be paid by the Trust. On June 18, 2024, the trial court entered an order awarding the HOA $24,580 in attorney fees. The Trust filed motions to alter or amend or set aside these orders on attorney fees. After a hearing, the court denied the motions and directed the attorneys for the Fosters and the HOA to file supplemental attorney fee affidavits for the fees and expenses associated with the motions. The trial court then entered a joint attorney fee order awarding the Fosters $51,448.60 and the HOA $26,542.50 in fees and costs. The Trust filed an amended notice of appeal.

## II. ISSUES PRESENTED

The issues properly presented by the Trust on appeal are somewhat difficult to determine because the Trust's brief lists nine lengthy issues for review, with its statement of the issues spanning five pages of its brief on appeal. However, the argument section of the Trust's brief is not separated into sections corresponding with these nine issues. Instead, it is divided into four sections entitled: Summary Judgment, Joinder, Parshot Agreement, and Declaratory Judgment Act. The Fosters and the HOA framed the issues on appeal as either two or three issues (aside from each of them also requesting an award of attorney fees on appeal).

The issues before us on appeal, as we perceive them, are: [4]

1.      Whether the trial court erred in granting summary judgment to the HOA and the Fosters on the basis that the Letter Agreement did not grant the Trust exclusive access to Parshot Lane;

2.      Whether the trial court erred by denying the motion to compel discovery and refusing to delay the hearing on the summary judgment motions until discovery could be conducted;

3.      Whether the trial court erred in concluding that the Trust's motion for partial summary judgment regarding the joinder of additional parties was moot;

4.      Whether the trial court erred in entering the four orders regarding

---

[4] One of the nine issues the Trust raised on appeal was whether the trial court erred in its order denying the motion for interlocutory appeal and granting summary judgment on the counterclaim because the court "erroneously found that the Trust conceded the issues in the Foster[s'] counter-complaint[.]" However, the argument section of the Trust's brief fails to develop any more than a skeletal argument regarding this issue. Therefore, we deem it waived. *See Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

attorney fees and costs after the Trust had filed its notice of appeal.[5]

5.      Whether any of the parties are entitled to awards of attorney fees on appeal.

For the following reasons, we affirm the decision of the chancery court and remand for the trial court to determine the amount of attorney fees to be awarded to the HOA and the Fosters on appeal.

## III.   DISCUSSION

### A.   *The Letter Agreement*

We begin with the Trust's contention that the trial court erred in granting summary judgment to the HOA and the Fosters, upon finding that the Letter Agreement did not limit the access of HOA members to Parshot Lane and the Trust had no right to erect a gate without the consent of the Fosters and the owners of Lot 20. We note that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 281 (Tenn. 2024).

Scattered throughout the argument section of its brief on appeal, the Trust raises various arguments as to how the trial court erred in its decision. First, the Trust discusses the special note on the subdivision plat. As previously discussed, the plat contained a "Special Note" regarding the lots' access to the roads, which stated:

LOTS 13, 14, 15, 16 AND 17 MAY TAKE EXCLUSIVE ACCESS FROM ROCKMAYNE LANE.

---

[5] One week before filing its brief on appeal, the Trust filed a motion in this Court pursuant to Tennessee Rule of Appellate Procedure 7 seeking "to review and reverse or stay execution of four trial court orders for attorney fees and costs." The motion asserted that the trial court had entered its orders more than thirty days after the Trust filed its notice of appeal, depriving the trial court of jurisdiction. The Trust also argued that Tennessee Code Annotated section 20-12-119(c)(3) prevented an award of attorney fees until all appeals were exhausted. It also raised issues regarding the bond required for appeal. In its brief filed one week later, the Trust discussed some of these same issues but noted that it had filed a Rule 7 motion that was currently pending. This Court subsequently entered an order finding no grounds to reverse the trial court's decision regarding the stay or the amount of the bond. We concluded that any other issues were more appropriately addressed in the brief, and such requests for relief were denied without prejudice to the Court considering any similar issues properly raised in the brief. We address some of these issues later in this opinion.

LOTS 18 AND 19 MAY TAKE EXCLUSIVE ACCESS FROM PARSHOT LANE.

The Trust argues on appeal that this special note is "vague" and was "disregarded" when the Fosters requested site plan approval for their home and constructed a driveway accessing Rockmayne Lane rather than Parshot Lane. We conclude, however, that the special note on the subdivision plat unequivocally gives Lot 18, owned by the Fosters, the *right* to take access from Parshot Lane. We do not deem it vague.

Next, the Trust argues that the Letter Agreement "modified" the Covenants. Thus, we note the following rules governing construction of contractual language:

> Under Tennessee law on contract interpretation, the "central principle . . . [is] to interpret contracts so as to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (citations omitted). Under "the strong strain of textualism in Tennessee caselaw," we "keep the written words as the lodestar of contract interpretation." *Id.* (citations omitted). Tennessee courts consider evidence of context where appropriate, but we "give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute." *Id.* (quoting Feldman, 21 Tenn. Practice § 8:14).

*Colley v. Colley*, 715 S.W.3d 293, 304 (Tenn. 2025).

On appeal, the Trust notes the trial court's finding that the Letter Agreement exempted it from paying certain annual assessments in exchange for assuming a significant financial burden. However, the Trust argues that the Letter Agreement actually "did much more than that." According to the Trust, the Letter Agreement "limited access to Parshot [Lane] to two adjoining Lots for 'maintenance access' which can be read as 'maintenance access only.'" However, the provision on which the Trust relies, read in context, states, "Maintenance access to Lots 18 & 20, from Parshot, will be granted as needed." As the trial court aptly noted, this language is one of two instances in which the Letter Agreement expressly contemplated that access to Parshot Lane *would* exist. The other stated, with respect to fencing, "Lot 20 Parshot Lane maintenance will be managed and funded by the HOA." There is nothing in the Letter Agreement stating that "exclusive use" or "exclusive access" would also be granted to the owners of Lots 19, 21, and 22 in exchange for their assumption of maintenance responsibilities. Nothing in the Letter Agreement states or suggests that Parshot Lane would become a private drive. Quite to the contrary, the original Covenants bear repeating:

8.03  Ingress/Egress and Utility Easements.  As shown in the Plat, there is hereby created a number of fifty foot (50') wide ingress/egress and utility easements across certain Lots which will allow ingress and egress to and from, and utility access to, one or more additional Lots that do not otherwise have road frontage.  The Ingress/Egress and Utility Easements are hereby established as perpetual and irrevocable easements across the Lots that they encumber.  Said easements are granted and reserved for their prescribed uses only.  No Owner shall have the right to restrict, impede or take any action in any way to prohibit or limit the prescribed uses of said easements by the persons intended to be benefited thereby.  Each Owner shall abide by the following terms, conditions and covenants:

(a) *Access Roads*. Developer initially shall construct and provide asphalt-paved access roads of at least twelve (12) feet in width **to be located on each of the Ingress/Egress and Utility Easements** which will provide access to those Lots that do not have road frontage (the "Access Roads"). . . . The Association shall be responsible for paying all costs associated with maintaining, repairing, improving or upgrading the Access Roads, which costs shall be recovered through the levy of annual or special assessments as appropriate. While the Access Roads are private to Owners of the Development and their invitees, **every Owner shall have the right to access and use all of the Access Roads regardless of whether or not a particular Access Road actually affords access to the applicable Owner's Lot.**
(b) *Common Gates*. Upon the unanimous agreement of all of the Owners who own Lots which are serviced by a particular private access road, there may be erected upon the applicable private access road common gates for purposes of security and restricting public access. Any such common gates shall be erected and maintained at the sole cost of those Owners whose Lots are serviced by the applicable private access road and shall be constructed in accordance with guidelines promulgated by the Committee from time to time, which may include a requirement that Plans for the construction of said common gates be submitted to the Committee for approval. . . . **All Owners (not just those owning Lots serviced by the applicable gated private access road) shall have free and unlimited access through any common gates erected pursuant to this Section.**

(bold emphasis added).  Like the trial court, we find no language in the Letter Agreement indicating an intention to override or modify these provisions.

The Trust argues that the Covenants are ambiguous because they provided that Parshot Lane would allow ingress and egress "to and from, and utility access to, one or more additional Lots that do not otherwise have road frontage."  The Trust contends that its lots are the only properties that "do not otherwise have road frontage" because the

- 22 -

Fosters requested access to construct their driveway from Rockmayne Lane. Thus, the Trust appears to suggest that the Fosters cannot utilize the ingress and egress easement on Parshot Lane because they now have "road frontage" on Rockmayne Lane. We do not interpret the Covenants in this manner, however. The original Covenants provided:

> (a) *Access Roads*. Developer initially shall construct and provide[6] asphalt-paved **access roads** of at least twelve (12) feet in width to be located on each of the Ingress/Egress and Utility Easements **which will provide access to those Lots that do not have road frontage** (the "Access Roads").

(emphasis added). Thus, the access roads, such as Parshot Lane and Rockmayne Lane, were built in order to provide access to those lots that did not have road frontage on public roads such as Bailey Road. The access roads do not themselves constitute "road frontage" within the meaning of the Covenants.

In addition, the Trust argues that there is a "contradiction" within the covenants because they go on to provide that the easement is for the benefit of all members and their invitees regardless of whether it provides access to the member's lot. Again, we see no contradiction. The Covenants first provide, "As shown in the Plat, there is hereby created a number of fifty foot (50') wide ingress/egress and utility easements across certain Lots **which will allow ingress and egress to and from, and utility access to**, one or more additional Lots that do not otherwise have road frontage." (emphasis added). The next section further provides that, "[w]hile the Access Roads are private to Owners of the Development and their invitees, every Owner shall have the right to access and use all of the Access Roads regardless of whether or not a particular Access Road actually affords access to the applicable Owner's Lot." There is no "contradiction" between these provisions.

Finally, the Trust argues on appeal that the Letter Agreement was a binding contract and that the Covenants, when amended in 2018, could not supersede or modify the Letter Agreement. However, the Covenants did not have to modify the Letter Agreement, as there was simply nothing in the Letter Agreement that gave the Trust exclusive access to Parshot Lane. As the trial court aptly noted, the Trust's argument to this effect "has it backwards." The same language was present in the original and amended Covenants granting all members of the subdivision a general right of access for use of the access roads. The Letter Agreement was silent as to any modification of the Covenants regarding exclusive access to Parshot Lane. As the trial court put it, "It is the Parshot Agreement which failed to modify the [Covenants] such that Parshot Lane became a private driveway, not the other way around." Thus, we affirm the trial court's rulings regarding the interpretation of the Letter Agreement.

---

[6] The amended Covenants replaced the phrase "shall construct and provide" with the word "constructed."

### B. Discovery

In its brief on appeal, the Trust presented two issues that related to discovery. Those issues were framed as follows:

> 1.    Whether the [trial court] erred in its order of December 6, 2023, denying the Trust's motion to compel discovery from the HOA,
> 2.    Whether the [trial court] erred in its order of December 6, 2023, by refusing to delay hearing on the HOA and Foster[s'] motions for summary judgment until discovery could be conducted.

The Trust relies on Tennessee Rule of Civil Procedure 56.07, which provides:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"This rule safeguards against a grant of summary judgment that is premature or improvident." *Graves v. Calloway*, No. W2022-01536-COA-R3-CV, 2023 WL 8772670, at *4 (Tenn. Ct. App. Dec. 19, 2023) (citing *Smith v. Hughes*, 639 S.W.3d 627, 649 (Tenn. Ct. App. 2021)). Its purpose "is to allow all parties a 'reasonable opportunity' to proffer evidence in support of or opposition to a motion for summary judgment." *F & M Bank v. Fleming*, No. M2020-01086-COA-R3-CV, 2021 WL 4438550, at *5 (Tenn. Ct. App. Sept. 28, 2021) (quoting *Denton v. Taylor*, No. E2015-01726-COA-R3-CV, 2016 WL 4042051, at *6 (Tenn. Ct. App. July 25, 2016)). "If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07." *Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 265 (Tenn. 2015). "Thus, an affidavit submitted by a party seeking further discovery pursuant to Rule 56.07 need not contain evidentiary facts related to the substantive merits of the case; rather, it must explain why the nonmoving party has not been able to obtain and present the evidentiary material needed to oppose the summary judgment motion." *Fed. Nat'l Mortg. Ass'n v. Daniels*, 517 S.W.3d 706, 714 (Tenn. Ct. App. 2015).

We review the trial court's refusal to grant a continuance under Rule 56.07 for abuse of discretion. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009). The trial court's decision to deny the party's request for additional time for discovery "'must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made.'" *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 537-38 (Tenn. Ct. App. 2012) (quoting *Regions*, 310 S.W.3d at

401).  The interest in full discovery "must be balanced against the purpose of summary judgment," which is to provide a quick, inexpensive way to conclude cases when no dispute exists regarding the material facts.  *Id*. at 537.  A trial court only errs in refusing to grant additional time for discovery prior to the hearing on a summary judgment motion "when the non-moving party can show that 'the requested discovery would have assisted [it] in responding to [the moving party's] motion for summary judgment.'"  *Id*. at 538 (quoting *Regions*, 310 S.W.3d at 401).

A brief review of the relevant timeline is helpful.  This lawsuit was filed by the Trust on March 9, 2023.  The Fosters filed their motion for summary judgment five months later, on August 30, 2023.  In September 2023, the Trust filed a response, acknowledging that "[n]o discovery ha[d] commenced" since the lawsuit was filed in March.  However, the Trust submitted an affidavit from its counsel, stating that she had attempted to review HOA documents *before* suit was filed, and she was largely unsuccessful because the records produced were "scant" and "not responsive."  The HOA filed its motion for summary judgment in October 2023.  The Trust then filed a second affidavit from its attorney, which stated that counsel had recently sent the HOA a request for physical inspection of documents pursuant to Tennessee Rule of Civil Procedure 34.02, and counsel for the HOA "was working on the records request" but refused the request for personal inspection, stating that everything was stored electronically and needed to be reviewed by him because the parties were in litigation.  On November 21, 2023, one week before the hearing on the summary judgment motions, the Trust filed a motion to compel production of documents, asking the trial court to "permit counsel for the Petitioner to personally inspect all HOA documents and records."  At the hearing on the summary judgment motions, on November 28, 2023, the trial judge specifically asked counsel for the Trust what type of documents she needed, and counsel described them as financial records.  However, upon its examination of the Letter Agreement, the trial court announced that she was not going to require the HOA to produce those financial documents because they simply were not relevant, in the trial judge's opinion, given her conclusion that the Letter Agreement did not provide the Trust with exclusive access to Parshot Lane.  The written order entered thereafter stated that the HOA was not required to tender additional discovery to the Trust at that time.

On appeal, the Trust argues that a nonmoving party may seek a continuance to engage in additional discovery "if [a] summary judgment motion is filed before adequate time for discovery has been provided."  The Trust goes on to state, "[i]n this case, *there had been time*, but the HOA had refused to respond to the Trust's discovery request, making depositions and written discovery to other parties and nonparties premature." (emphasis added).  Thus, the Trust apparently concedes that adequate time for discovery had been provided.  The case had been pending for five months before the first summary judgment motion was filed in August, and no discovery had occurred during that period.  Counsel for the Trust then waited until October before serving on counsel a request for physical inspection of documents.  This appears to be the only "discovery" in which

counsel engaged prior to the summary judgment hearing on November 28. The Trust admits in its brief on appeal that "no discovery had been conducted." We cannot agree with the assertion that written discovery was "premature." Furthermore, the trial court determined that the additional financial records sought by the Trust were simply not relevant in light of its interpretation of the Letter Agreement on which the Trust relied. We discern no abuse of discretion in the trial court's decision to deny a continuance under these circumstances.

The Trust also argues that the trial court's denial of its motion to compel, which was filed one week before the summary judgment hearing, "restrict[ed] the [Trust's] ability to respond to the Appellees' motions for summary judgment." For the same reasons discussed in the previous section, we discern no abuse of discretion in the trial court's denial of the Trust's motion to compel. *See Smith*, 639 S.W.3d at 650; *Battery All., Inc. v. Allegiant Power, LLC*, No. W2015-02389-COA-R3-CV, 2017 WL 401349, at \*4 (Tenn. Ct. App. Jan. 30, 2017) ("A trial court's determinations regarding pre-trial discovery, including motions to compel, are reviewed under an abuse of discretion standard.").

### *C. Joinder*

We will now address the Trust's arguments regarding joinder. On appeal, the Trust designated three issues for review that appear to relate to the issue of joinder, although they are a bit difficult to follow:

> 3. Whether the [trial court] erred in failing to rule on the Trust's motion for partial summary judgment as whether the service of the Petition on the Fosters and HOA was sufficient or that additional parties must be joined.
> . . .
> 6. Whether the Trust's Petition for Declaratory Judgment alleged facts demonstrate the existence of actual controversy concerning a matter covered by the declaratory judgment statute as to joinder of parties.
> 7. Clarification ofthe [sic] contradiction between the Tennessee Declaratory Judgment Act requiring all potentially interested parties be named, and Tennessee case law stating that all property owners in a subdivision are not required to be joined in an action regarding enforcement of restrictive covenants, that it is reasonable to conclude that an HOA "is a convenient instrument by which the property owners [can] advance their common interests and that it has a substantial identification with the real property owners" and, therefore, standing to commence.

Essentially, the Trust contends that *the Fosters' argument* in the trial court regarding failure to join indispensable parties "required resolution," so the Trust filed a motion for partial summary judgment on that issue, but the trial court declared the motion moot after granting summary judgment to the HOA and the Fosters. Again, the trial court's order stated that

the court had already declared the rights and obligations of the parties such that the Trust's petition for declaratory judgment had been defeated, and the issue of whether every member of the HOA needed to be named as a party did not impact its findings that the Trust violated the Covenants and wrongfully impeded the Fosters' right to access Parshot Lane. The trial court reasoned that the Fosters' affirmative defense regarding whether "more people must be named as parties to the Trust's claim is no longer relevant."

Notably, it was *the Fosters* who argued to the trial court that additional parties were necessary, but they do not challenge the trial court's decision on this issue. In fact, in their brief on appeal, they argue that the trial court correctly determined that the summary judgment rulings rendered moot the issue regarding joinder, which was raised by them as an affirmative defense. *The Trust*, on the other hand, consistently argued in the trial court that no additional parties needed to be added, and on appeal, it maintains that the HOA was the only necessary party because it had standing to act on behalf of all its members. Thus, it is not clear what relief the Trust seeks on appeal with respect to this issue, even if we were to assume for the sake of argument that the Trust was correct. The trial court proceeded to consider the issues before it without the participation of any additional parties, which is exactly what the Trust argued was appropriate. The Trust does not explain how it was prejudiced by the trial court's decision. The Trust does not appear to seek a remand for the trial court to consider the motion for partial summary judgment and then rule that no additional parties were necessary, and we do not see what doing so would accomplish. Thus, the error the Trust alleges appears harmless in any event. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); *Feldman v. Tenn. Bd. of Med. Examiners*, No. M2010-00831-COA-R3-CV, 2011 WL 2536471, at *18 (Tenn. Ct. App. June 27, 2011) ("Because the alleged error would be harmless in any event, we will not consider the issue."); *Atkinson v. State*, 337 S.W.3d 199, 210 (Tenn. Ct. App. 2010) ("Assuming for the sake of argument that the Commission erred when it excluded this evidence, the decision did not affect its judgment or prejudice the judicial process. We accordingly hold that the alleged error was harmless."). In fact, the conclusion section of the Trust's brief simply states, "[c]larification on this issue is important if this case is reversed," seeming to suggest that the issues only mattered to the Trust in the event of reversal. Because we have affirmed the trial court's ruling as to summary judgment, we decline to consider the Trust's issues regarding its motion for partial summary judgment on the issue of joinder.

### D.    Attorney Fees

Now, we turn to the issues presented on appeal regarding attorney fees. The Trust argues that the trial court erred in entering four orders regarding attorney fees after the Trust had filed its notice of appeal in May 2024. However, as previously noted, the trial court's earlier summary judgment order, from January 2024, had provided that the HOA

and the Fosters were awarded their attorney fees, and it directed them to prepare and file affidavits of attorney fees, which they did. The trial court had not entered specific amounts of attorney fees in accordance with those earlier orders when the Trust filed its notice of appeal. We recognize that the trial court's second summary judgment order, granting the Fosters summary judgment on their counterclaim for breach of contract in April 2024, stated that the counterclaim was "the only issue remaining before the court," and therefore, the order would be final and appealable. In reality, however, the amount of attorney fees awarded remained outstanding, so the order was not actually a final judgment. In this context, a "'final judgment' refers to a trial court's decision adjudicating all the claims, rights, and liabilities of all the parties." *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 n.17 (Tenn. 2012) (citing Tenn. R. App. P. 3(a)). A final judgment resolves all issues and leaves "nothing else for the trial court to do." *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). "In contrast, an order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final[.]" *Id.* Clearly, then, the summary judgment orders themselves were not final in this case. *See Aloha Pools & Spas of Jackson, LLC v. Eleiwa*, No. W2023-00941-COA-R3-CV, 2024 WL 2768448, at *3 (Tenn. Ct. App. May 30, 2024) ("[T]he trial court's August 2022 judgment was not a *final* judgment because it expressly reserved setting the amount of attorney's fees to a later date."); *Scott v. Noland Co.*, No. 03A01-9407-CV-00248, 1995 WL 11177, at *1 (Tenn. Ct. App. Jan. 12, 1995) ("The record . . . does not contain an order of the trial court awarding a specific amount of attorney's fees pursuant to the 'Final Judgment.' Since there is no order in the record before us finally disposing of the Plaintiffs' claim for attorney fees at the trial level, the 'Final Judgment' from which this appeal is being pursued is not a final order and hence not appealable as of right under Tenn. R. App. P. 3(a)."); *Spencer v. The Golden Rule, Inc.*, No. 03A01-9406-CV-00207, 1994 WL 589564, at *1 (Tenn. Ct. App. Oct. 21, 1994) ("There is nothing in the record before us reflecting that the trial court has awarded a *specific amount* as the 'reasonable attorney's fees incurred in prosecuting' this action. . . . Since there is no order in the record before us *finally* disposing of the Plaintiff's claim for attorney fees at the trial level, the Order from which this appeal is being pursued is not a final order and hence not appealable as of right under Tenn. R. App. P. 3(a)."). We conclude that the trial court did not lack jurisdiction to enter the orders resolving the outstanding issues regarding attorney fees.

Next, the Trust argues that the awards of attorney fees violated Tennessee Code Annotated section 20-12-119(c)(3), which, the Trust argues, "requires that an award of attorney's fees be made only after all appeals of the issue have been exhausted, and only if the final outcome grants the HOA's or Fosters' motions for summary judgment." This section, by its terms, however, applies only "where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted[.]" Tenn. Code Ann. § 20-12-119(c); *see Simmons v. Islam*, No. M2023-01698-COA-R3-CV, 2024 WL 4948939, at *9 (Tenn. Ct. App. Dec. 3, 2024) *perm. app. denied* (Tenn. Apr. 17, 2025) (finding a pro se litigant's reliance on this

subsection "unavailing" because the order "did not arise from granting a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure but rather a summary judgment motion pursuant to Rule 56 of the Tennessee Rules of Civil Procedure," and he failed to develop "any argument as to why the language of Tennessee Code Annotated section 20-12-119(c)(5)(D), which by its own terms applies to '[t]his subsection (c),' meaning Rule 12 motions, is applicable to Rule 56 motions"); *Craig v. Peoples Cmty. Bank*, No. E2016-00575-COA-R3-CV, 2016 WL 7495185, at *4 (Tenn. Ct. App. Dec. 30, 2016) ("[T]he matter was correctly treated as a motion for summary judgment. The Bank's motion for fees and costs under Tenn. Code Ann. § 20-12-119(c) was correctly denied, because the motion was not properly considered as a motion to dismiss under Tenn. R. Civ. P. 12.02(6). Accordingly, the statute is not applicable here."); *Davidson v. Baydoun*, No. M2014-01486-COA-R3-CV, 2015 WL 3455426, at *4 (Tenn. Ct. App. May 29, 2015) ("Plaintiff also erroneously contends that Tenn. Code Ann. § 20-12-119(c)(3) prohibited the award of discretionary costs until all appeals have been exhausted. Subsection (c) of Tenn. Code Ann. § 20-12-119 applies when a trial court has dismissed a case for failure to state a claim on which relief can be granted pursuant to Tenn. R. Civ. P. 12. *See* Tenn. Code Ann. § 20-12-119(c). Plaintiff's claim was dismissed on a motion for summary judgment; therefore this statute is not applicable."). This argument is meritless.

Next, the Trust suggests that the trial court awarded "anticipatory appellate fees" and that a trial court cannot award fees for "future litigation." We disagree with the Trust's characterization of the trial court's orders. The trial court merely referenced the amounts the attorneys anticipated that the Fosters and the HOA would incur for appellate work when initially considering the amount of the bond. Ultimately, however, the final order on the matter set the bond at a specified percentage of the judgment the Trust owed for attorney fees. This Court's previous order found no grounds to reverse the trial court's decision regarding the amount of the bond. The trial court did not award "anticipatory appellate fees," as the Trust suggests.

The Trust also vaguely suggests that the four orders "are overlapping and do not clarify the total in fees awarded." It contends that the trial court "did not clarify the amount of fees as additional or inclusive of fees in the prior orders" such that the orders are "confusing and do not comply with Tennessee law." We find nothing confusing or overlapping about the trial court's orders.

The Trust also argued that it was entitled to a reversal of all attorney fee awards and that it should be awarded attorney fees incurred in the trial court and on appeal "from enforcement of the [Letter] Agreement]." Because we have affirmed the trial court's rulings, this issue is without merit.

Finally, we note that the HOA and the Fosters requested awards of attorney fees they incurred on appeal, pursuant to the following provision of the Covenants:

Section 3. <u>Enforcement</u>. If any person or entity shall violate or attempt to violate any provisions of this Declaration [of Covenants, Conditions, and Restrictions], it shall be lawful for the Association, or any aggrieved Member to bring an action against the violating party at law or in equity for any claim that this Declaration may create either to prevent said person or entity from doing such acts or to recover damages for such violation. . . . Should the Association, or any aggrieved Member employ counsel to enforce any of the covenants or restrictions contained in this Declaration, the prevailing party in any legal action shall be entitled to recover from the nonprevailing party its reasonable attorney's fees and expenses incurred in such action.

"[P]arties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). "We have previously held that CCRs [Covenants, Conditions, and Restrictions] 'arise from a series of overlapping contractual transactions' and as such, 'should be viewed as contracts.'" *Parker v. Brunswick Forest Homeowners Ass'n, Inc.*, No. W2018-01760-COA-R3-CV, 2019 WL 2482351, at *4 (Tenn. Ct. App. June 13, 2019) (quoting *General Bancshares, Inc. v. Volunteer Bank & Trust*, 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000)). We conclude that the HOA and the Fosters are entitled to an award of their attorney fees on appeal pursuant to the Covenants. The trial court is directed to determine the appropriate amount of reasonable attorney fees on remand.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellants, Patrick Kevin Morris and Gabrielle Morgerman, Trustees of the Morris Morgerman Trust UAD September 28, 2000, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE